UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RAJU AHMED,

        Petitioner,

v.

        **MEMORANDUM AND ORDER**
        26-CV-3656 (OEM)

RAUL MALDONADO JR., *et al.*,

        Respondents.
-----------------------------------------------------------x

ORELIA E. MERCHANT, United States District Judge:

On June 17, 2026, Raju Ahmed ("Petitioner") filed a petition for a writ of habeas corpus against Raul Maldonado Jr., in his official capacity as warden of Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"); Judith Almodovar, in her official capacity as New York Field Office Director for U.S. Immigration and Customs Enforcement ("ICE"); Todd Blanche, in his official capacity as Acting Attorney General of the United States; Markwayne Mullin, in his official capacity as Secretary of the U.S. Department of Homeland Security; and David J. Venturella, in his official capacity as ICE Senior Official Performing Duties of Director. *See generally* Amended Petition for Writ of Habeas Corpus, Dkt. 1 ("Petition" or "Pet.").[1] Petitioner challenges the lawfulness of his ongoing detention by ICE under the Immigration and Nationality Act ("INA"), the Fifth Amendment of the U.S. Constitution ("Fifth Amendment"), and the Administrative Procedure Act ("APA"). *Id.* ¶¶ 87-106. Petitioner seeks his immediate release or, in the alternative, a "constitutionally adequate, individualized bond hearing." *Id.* at 30.

For the following reasons, Petitioner's request for a bond hearing is granted.

---

[1] Although the Petition is titled "Amended Petition for Writ of Habeas Corpus," it is the first and only petition filed in this action.

# BACKGROUND

## A. Petitioner's 2023 Entry

Petitioner is a citizen of Bangladesh. *Id.* ¶ 9. He entered the United States on July 17, 2023, near San Luis, Arizona. *See* Declaration of Mincheol So ¶ 3, Dkt. 9-1 ("So Decl."). Petitioner was taken into custody by United States Border Patrol following his entry, and he was subsequently transported to the Yuma Sector Border Patrol Station for processing. *Id.* During processing, Petitioner admitted to entering the United States illegally and was placed in expedited removal proceedings. *Id.*¶¶ 4-6. Petitioner remained detained pending his expedited removal, and he was transferred to the Jackson Parish Correctional Center in Jonesboro, Louisiana, on July 24, 2023. *Id.* ¶ 6.

On July 25, 2023, ICE Enforcement and Removal Operations ("ERO") referred Petitioner for a credible fear interview because he expressed a fear of return to his home country. *Id.* ¶ 7. Petitioner received credible fear interviews on August 1, 2023, and August 3, 2023. *Id.* ¶ 8. The interviewing officer determined that Petitioner established a positive credible fear claim, and on August 6, 2023, Petitioner was served with Form I-862, Notice to Appear ("NTA"), charging him with removability pursuant to INA § 212(a)(7)(A)(i)(I) (codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I)) and INA § 212(a)(6)(A)(i) (codified at 8 U.S.C. § 1182(a)(6)(A)(i)). *Id.* ¶¶ 8-9. The NTA ordered Petitioner to appear before an immigration judge at 26 Federal Plaza, New York, New York on February 20, 2024, and noted that the NTA was "being issued after an asylum officer found Petitioner had demonstrated . . . a credible fear of persecution or torture." *Id.* ¶ 9. ICE also served Petitioner with an Interim Notice Authorizing Parole, which authorized his temporary release on humanitarian parole under 8 U.S.C. ¶ 1182(d)(5)(A) for a period of one year. *Id.* ¶ 10. On August 9, 2023, Petitioner was released from custody on interim parole. *Id.*

Petitioner's one-year parole expired on August 6, 2024.  *Id.* ¶ 12.  Petitioner, however, continued reporting to ICE in New York following the expiration of his parole.  *Id.* ¶¶ 13-15.

**B.  Petitioner's 2026 Criminal Charge and ICE Detention**

While working as a driver for Uber, Petitioner accepted "what he understood to be an ordinary request to transport a package between two parties."  Second Declaration of Brenna Ramirez in Support of Amended Petition for Writ of Habeas Corpus ¶ 4, Dkt. 10-1 ("Ramirez Decl.").  Petitioner maintains "that [the] package was the instrument of a scam that a third party perpetrated on the sender," and he "was unaware of the fraudulent nature of the transaction and only acted as a courier."  *Id.*

On April 2, 2026, Petitioner was arrested by the New York City Police Department in connection with that transaction, and he was arraigned in Queens County Criminal Court on April 4, 2026.  *Id.* ¶ 5.  Although Petitioner was arrested on charges that included felony criminal impersonation in the first degree under New York Penal Law ("NYPL") § 190.26(1), he was arraigned only a single count of misdemeanor petit larceny under NYPL § 155.25.  *Id.*  Petit larceny is the only charge pending against Petitioner, and he "maintains his innocence and contests [the charge]."  *Id.*

On April 9, 2026, Petitioner was identified by the ERO's Criminal Alien Program.  So Decl. ¶ 16.  After conducting a records check and confirming Petitioner's arrest and petit larceny charge, ICE issued a Form I-200, Warrant for Arrest of Alien, and took Petitioner into custody when he reported for a check-in at 26 Federal Plaza, New York, New York, on May 6, 2026.  *Id.* ¶ 17.  Petitioner is currently detained at MDC Brooklyn.  *Id.* ¶ 20.

Petitioner's criminal defense counsel filed a motion challenging the facial sufficiency of the accusatory instrument on June 29, 2026, *see* Ramirez Decl., Exhibit A, Dkt. 10-2, and the criminal court scheduled a return date on that motion for August 25, 2026, Ramirez Decl. ¶ 8.

## DISCUSSION

Petitioner asserts four causes of action. *See* Pet. ¶¶ 87-106. His first three causes of action—(1) violation of the INA, (2) violation of due process, and (3) violation of the APA—are premised upon the assertion that Petitioner is subject to discretionary detention under 8 U.S.C. § 1226(a) ("Section 1226(a)"). *See id.* ¶¶ 87-102. His fourth action of action asserts that, should Petitioner be detained under 8 U.S.C. § 1226(c)(1)(E) ("Section 1226(c)(1)(E)"), the statute's provision "for mandatory detention of individuals merely '[]arrested for' or '[]charged with' certain offen[s]es with no individualized assessment of any valid basis for detention violates due process." *Id.* ¶ 104. In response, Respondents contend that Petitioner is properly subject to the mandatory detention authority of Section 1226(c)(1)(E) and therefore all the causes of action fail. *See* Letter from Respondents to the Court (July 2, 2026), Dkt. 9 ("Return").

The Court first addresses the relevant detention authority before turning to Petitioner's due process claim.

### A. Statutory Basis for Petitioner's Detention

Petitioner contends that his detention is governed by Section 1226(a), which "allows for release on conditional parole or bond, and requires an individualized determination upon arrest." Pet ¶ 5. Respondents argue that Petitioner is subject to mandatory detention under Section 1226(c)(1)(E). Return at 3.

Section 1226(c)(1)(E), also known as the "Laken Riley Act," states, in pertinent part, that

> [t]he Attorney General shall take into custody any alien who (i) is inadmissible under paragraph (6)(A), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits

4

committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

8 U.S.C. § 1226(c)(1)(E). Thus, Section 1226(c)(1)(E) mandates the detention of aliens who satisfy an inadmissibility and a criminality requirement. *See id.* To be "inadmissible" under Section 1226(c)(1)(E), the alien (1) is present in the United States without having been admitted[2] or paroled, 8 U.S.C. § 1182(a)(6)(A); (2) obtained documents or admission through fraud or misrepresentation, *id.* § 1182(a)(6)(C); or (3) lacks valid documentation to enter the United States, *id.* § 1182(a)(7). As for the criminality requirement, the listed offenses have "the meanings given such terms in the jurisdiction in which the acts occurred." *Id*. § 1226(c)(2).

Petitioner is subject to mandatory detention under Section 1226(c)(1)(E). First, he is charged as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and 8 U.S.C. § 1182(a)(6)(A)(i), reflecting that he did not possess valid documentation to enter to United States and entered the United States without being admitted or paroled, *see* So Decl. ¶ 9; 8 U.S.C. § 1182(a)(7)(A)(i)(I); 8 U.S.C. § 1182(a)(6)(A)(i).[3]

Second, Petitioner was arrested for and charged with petit larceny, thereby satisfying Section 1226(c)(1)(E)'s criminality requirement. As noted above, the relevant statutory category of "larceny" under Section 1226(c)(1) is defined by the law of the jurisdiction in which the acts occurred, which is New York. *See* 8 U.S.C. § 1226(c)(2). NYPL Section 155 states that "[a] person steals property and commits larceny when, with intent to deprive another of property or to

---

[2] "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

[3] Although Petitioner's grant of temporary humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) may render 8 U.S.C. § 1182(a)(6)(A)(i) inapplicable, the applicability of 8 U.S.C. § 1182(a)(7)(A)(i)(I) remains unaffected. Further, at a hearing on July 14, 2026, Petitioner conceded that "there is no question" that Section 1226(c)(1)(E) is applicable, thereby waiving any challenge to the statute's applicability, based on the inadmissibility requirement or otherwise. *See* Transcript of Civil Cause for Order to Show Cause Hearing Before the Honorable Orelia E. Merchant United States District Judge at 7:17-18.

appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof. N.Y.P.L. § 155.05(1). The NYPL further states that "[a] person is guilty of petit larceny when he steals property." *Id.* § 155.25. Thus, petit larceny falls within the definition of "larceny" under New York law. *See Oldacre v. Arteta*, 26-cv-2672 (JGK), 2026 WL 1398650, at *4 (S.D.N.Y. May 19, 2026), *amended in part*, 26-cv-2672 (JGK), 2026 WL 1718184 (S.D.N.Y. June 12, 2026). Whether the State ultimately will be able to prove those charges beyond a reasonable doubt is not relevant to whether Petitioner falls within the scope of Section 1226(c)(1)(E).

Accordingly, mandatory detention under § 1226(c)(1)(E) applies to Petitioner. *See Oldacre*, 2026 WL 1398650, at *4 (determining that Section 1226(c)(1)(E) applied to an inadmissible alien charged with, among other things, petit larceny). As Petitioner's first three causes of action are premised upon ICE's alleged failure to exercise discretion when detaining him pursuant to Section 1226(a), *see* Pet. ¶¶ 87-102, those causes of action provide no grounds for relief.

**B. Due Process**

Turning to Petitioner's due process argument in his fourth cause of action, Petitioner challenges Section 1226(c)(1)(E)'s provision mandating detention for aliens "arrested for" or "charged with" certain offenses without an individualized assessment. *See id.* ¶ 104. The text of Section 1226(c)(1)(E) is clear in mandating the detention of aliens who fall within its ambit. *See* 8 U.S.C. § 1226(c)(1) (requiring that "the Attorney General *shall* take into custody any alien who" meets the criteria for detention (emphasis added)). Further, the Second Circuit has held that "due process does not require an *initial* bond determination for those detained under section 1226(c)." *Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024) (first citing *Demore v. Kim*, 538 U.S. 510

6

(2003); and then citing *Jennings. Rodriguez*, 538 U.S. 281 (2018)).  Accordingly, neither the statute itself nor due process required Respondents to provide Petitioner with an individualized assessment at the outset of his detention.

However, *Black v. Decker* does not foreclose all due process claims for aliens detained pursuant to Section 1226(c).  As established by the court in *Black*, "due process bars the Executive from detaining such individuals for an unreasonably prolonged period . . . without a bond hearing." 103 F.4th at 143.  To the extent Petitioner raises a prolonged detention due process argument, *Mathews v. Eldridge*, 424 U.S. 319 (1976), provides the relevant analytical framework.  *See Black,* 103 F.4th at 150-51.  The *Mathews* factors are (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.

With respect to the first *Mathews* factor, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment."  *Velasco Lopez v. Decker*, 978 F.3d 843, 851 (2d Cir. 2020) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).  The first *Mathews* factor therefore weighs in Petitioner's favor.  However, Petitioner's relatively brief period of detention reduces the weight of his interest.  As discussed in *Black*, due process may require a bond hearing when Section 1226(c) mandatory detention becomes unreasonably prolonged.  103 F.4th at 150-51.  While declining to establish a bright-line rule for when that point is reached, the court found "that any immigration detention exceeding six months without a bond a hearing raises serious due process concerns."  *Id.* at 150 (first citing *Demore*, 538 U.S. 510; and then citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).  Here, Petitioner has been detained for

7

a little over two months, *see* Pet. ¶ 9, which is not presumptively unreasonable, *see Zadvydas*, 533 U.S. at 701 (recognizing a "presumptively reasonable period of detention" of six months); *see also Oldacre*, 2026 WL 1398650, at *6 (noting that "[the petitioner's] detention, currently about two months, falls well short of the periods the Court of Appeals and the Supreme Court have identified as raising serious constitutional concerns"). Accordingly, the first prong of the *Mathews* test favors Petitioner, but not dispositively at this stage in the analysis.

With respect to the second *Mathews* factor, the risk of erroneous deprivation is high. "Civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 317 (E.D.N.Y. 2025) (quoting *Zadvydas*, 533 U.S. at 690). The court in *Black* noted "the almost nonexistent procedural protections in place for section 1226(c) detainees," which "markedly increase the risk of an erroneous deprivation of . . . private liberty interests." 103 F.4th at 152. The risk of erroneous deprivation is exacerbated for people like Petitioner who are detained pursuant to criminal arrest or charging under Section 1226(c)(1)(E), as "liberty is withdrawn at the accusation stage, automatically, and without individualized determination." *Peralta-Malla v. Mullin*, 26 Civ. 2903 (AT), 2026 WL 1346325, at *5 (S.D.N.Y. May 14, 2026) (quoting *Nosirov v. Rife*, 26 Civ. 1534, 2026 WL 916602, at *6 n.3 (E.D. Pa. Apr. 1, 2026)).

Although Section 1226(c)(1)(E) does not require an adjudication of guilt or innocence before mandatory detention attaches, the particular facts of this case reflect a substantial risk of erroneous deprivation given the lack of record evidence demonstrating Petitioner's dangerousness or risk of flight. Beyond Petitioner's unproven and highly contested misdemeanor charge for a non-violent offense, there is no evidence that Petitioner is a danger to the community, and

Respondents' declaration reflects a multi-year record of Petitioner's compliance in his immigration proceedings. *See* So Decl. ¶ 13-15; *cf. Oldacre*, 2026 WL 1398650, at *6-7 (finding that "the particular facts of this case reduce . . . the risk that [the petitioner] is being erroneously detained without any adequate basis" in light of evidence of "violent altercations" and the petitioner's presence in the United States for less than two years). As such, "almost *any* additional procedural safeguards . . . in the detention would add value. The most obvious of these . . . would be an individualized bond hearing at which an [immigration judge] can consider [Petitioner's] dangerousness and risk of flight." *Black*, 103 F.4th at 153. Accordingly, the second *Mathews* factor favors Petitioner.

With respect to the third *Mathews* factor, the Government has well-established interests in "(1) ensuring [a] noncitizen's appearance at proceedings, and (2) protecting the community from noncitizens who have been involved in crimes that Congress has determined differentiate them from others." *Id.* Section 1226(c)(1)(E) "expresses Congress's concern that aliens unlawfully present in the United States who are arrested for theft-related offenses and other specific offenses may present a danger to the community or a risk of flight." *Oldacre*, 2026 WL 1398650, at *7. Nevertheless, the record does not suggest that a bond hearing will impair the Government's interests in ensuring the effective enforcement of immigration of laws and protecting the community. Immigration detention hearings are routine and impose a minimal cost, *Peralta-Malla*, 2026 WL 1346325, at *5 (citing *Sandoval Rodriguez v. Warden of the Cal. City Det. Facility*, 26 Civ. 2080, 2026 WL 970545, at *5 (E.D. Cal. Apr. 10, 2026), *report & recommendation adopted*, 1:26-cv-2080 DJC CSK, 2026 WL 1068774 (E.D. Cal. Apr. 20, 2026)), and, as noted by the Second Circuit, "retaining and housing detainees imposes substantial costs." *Black*, 103 F.4th at 154. Further, cases arising under Section 1226(c), such as this one, do not

implicate the Government's interest in the prompt execution of removal orders as a final order of removal has not been issued. *See Peralta-Malla*, 2026 WL 1346325, at \*5 (citing *Velasco Lopez*, 978 F.3d at 853 n.10). Accordingly, the third *Mathews* factor favors Petitioner. *See Peralta-Malla*, 2026 WL 1346325, at \*5 ("[T]he government interest 'is not well served where, as here, a noncitizen is detained without a bond hearing—and thus an opportunity for an immigration judge to determine whether he poses a danger to the community or a flight risk—simply because he was arrested for, and charged with, an offense under § 1226(c).'" (quoting *Alcantara Guerrero v. Wesling*, 1:26-cv-10928-JEK, 2026 WL 931503, at \* 5 (D. Mass. Apr. 6, 2026))).

Taken together, Petitioner's detention without a bond hearing is "unreasonably prolonged" under *Black*. 103 F.4th at 150-51. While Petitioner's two-month detention falls well short of the six-month mark of presumptive unreasonableness, Section 1226 "cannot be construed to require a bond hearing after any particular fixed period of detention." *Id.* at 142. Rather, courts must engage in a "flexible due process analysis" to "determine, case by case, whether and when due process requires that particular detained noncitizen receive a bond hearing." *Id.* at 150-51. In doing so here, the Court finds that Petitioner's two-month detention without a bond hearing under Section 1226(c)(1)(E) violates his due process rights.[4] *See Peralta-Malla*, 2026 WL 1346325, at \*6 (granting a request for a bond hearing where a petitioner with a vehicular manslaughter charge was detained for one month under Section 1226(c)(1)(E)); *see also Fortunato Tapia v. Arteta*, 26-CV-2627 (VSB), 2026 WL 1863849, at \*8 (S.D.N.Y. June 29, 2026) (granting a bond hearing where the petitioner was either detained pursuant to 8 U.S.C. § 1225(b)(2) or Section 1226(c)(1)(E) for over four months).

---

[4] The Court need not, and does not, decide whether Section 1226(c)(1)(E) is facially unconstitutional.

**CONCLUSION**

For the foregoing reasons, Petitioner's request for a bond hearing is granted.  By July 20, 2026, Respondents are ordered to provide Petitioner with a bond hearing before an immigration judge where the Government bears the burden of demonstrating by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk.  *See Black*, 103 F.4th at 155-58. The immigration judge must also consider Petitioner's ability to pay and alternatives to detention when setting any bond amount.  *Id.* at 158.  In the event Respondents fail to provide Petitioner with such a bond hearing by July 20, 2026, Respondents are ordered to release Petitioner immediately.

By July 21, 2026, Respondents shall certify compliance with this Order by filing on the docket Petitioner's constitutionally adequate bond hearing date and outcome and/or release date.

SO ORDERED.

*/s/*

ORELIA E. MERCHANT
United States District Judge

July 15, 2026
Brooklyn, New York